[Cite as *In re J.E.*, 2016-Ohio-1500.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN THE MATTER OF J.E. | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | |
| | : | Case No. 15CA19 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Knox County Court
                                 of Common Pleas, Juvenile Division,
                                 Case No. 213-2045



JUDGMENT:                        Affirmed



DATE OF JUDGMENT:                April 8, 2016




APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant S.J.

KNOX COUNTY DEPARTMENT OF                 CHRISTINA I. REIHELD
JOB AND FAMILY SERVICES                   P.O. Box 532
TONIA R. PEVER                            Danville, Ohio 43014
117 E. High Street, 3rd Fl.
Mount Vernon, Ohio 43050

*Baldwin, J.*

{¶1}    Appellant S.J. appeals a judgment of the Knox County Common Pleas Court, Juvenile Division, terminating her parental rights, and awarding permanent custody of her son J.E. (D.O.B. 2/7/2007) to appellee Knox County Department of Job and Family Services (KCDJFS).

<u>STATEMENT OF FACTS AND CASE</u>

{¶2}    On July 3, 2013, appellant was found unresponsive in the restroom of a McDonald's restaurant.  Her two sons, C.E. and J.E., were taken into the custody of appellee the same day.   The children were placed in the temporary custody of appellee on September 24, 2013.

{¶3}    Appellant's case plan required her to engage in drug treatment and submit drug screens through the Freedom Center, obtain and maintain stable housing, and participate in mental health counseling.

{¶4}    Until December of 2013, appellant made good progress on the case plan. However, on December 11, 2013, she was arrested.  After she met a man named Scott Reynolds, who had a criminal history and was involved with drugs, her addiction to heroin spiraled out of control.  While appellant initially visited the boys twice a week, by February of 2014 visits were decreased to once a week, with an additional Friday visit if she provided a clean drug screen.  Appellant never provided a clean screen for the Friday visits.  At visits, appellant would tell the children that they would be coming home, but she failed to follow through with drug treatment.   During the pendency of the case, appellant lived in five different places, was homeless for a period of twelve months, and was arrested four times.

{¶5} The boys were diagnosed with a "not otherwise specified" emotional disorder that was trauma based. The boys acted out in angry and aggressive ways because it was difficult for them to understand what was happening in their lives. They would make progress, but would regress when appellant missed calls or visits. Although the boys loved their mother, they did well in foster care and the son and daughter-in-law of the foster family, who lived in the foster home with the boys, wanted to adopt them. Throughout the case, the boys expressed conflicting desires as to whether they wanted to live with their mother or stay in the foster home.

{¶6} Appellant entered residential treatment at Cambridge Behavioral Health in March of 2015, and was discharged on April 9, 2015. However, by April 21, 2015, she was once again homeless. She failed to appear for a scheduled family meeting on May 21, 2015, and the probation officer notified appellant's caseworker that she had tested positive for drugs. The guardian ad litem filed a motion for permanent custody on May 22, 2015.

{¶7} After Scott Reynolds went to prison in July of 2015, appellant began to improve with regards to sobriety and her mental health. She secured an appropriate apartment. The court conducted a two day hearing on the permanent custody motion on August 31, 2015, and September 24, 2015.[1] Although she had a positive drug screen on August 31, 2015, and was involved in an incident with law enforcement on September 2, 2015, she was more stable at the time of the permanent custody hearing than she had been throughout the pendency of the case.

---

[1] The recording of the second day of the trial could not be located. In lieu of a transcript of the second day of the hearing, the parties have submitted an App. R. 9(C) statement of the evidence, and a judgment entry of the court regarding the evidence from the second day of trial. The parties stipulated that the two statements complement each other and should be used as the official record of the second day of the proceedings.

{¶8} The court granted the motion for permanent custody, finding that the children had been in the custody of appellee for more than twelve months of a consecutive twenty-two month period. The court further found that while it was clear that appellant loved her children and her children loved her, permanent custody was in the best interest of the boys, as they needed stability and permanency which appellant had been unable to provide.

{¶9} Appellant assigns two errors on appeal:

{¶10} "I. THE TRIAL COURT ERRED BY FAILING TO APPOINT SEPARATE COUNSEL FOR THE CHILDREN WHERE THERE WAS EVIDENCE OF A CONFLICT OF INTEREST BETWEEN THE CHILDREN'S WISHES AND THE RECOMMENDATION OF THE GUARDIAN AD LITEM.

{¶11} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING THE STATE PERMANENT CUSTODY OF BOTH CHILDREN."

I.

{¶12} Appellant argues that because J.E. wanted to live with his her, but the guardian ad litem recommended permanent custody, a conflict of interest existed that required the appointment of independent counsel to represent J.E.

{¶13} In *In re Williams,* 101 Ohio St.3d 398, 805 N.E.2d 1110, 2004–Ohio–1500, the Ohio Supreme Court held that a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and is entitled to independent counsel under certain circumstances. "[C]ourts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account

the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." *Id.* at ¶ 17.

{¶14}  The *Williams* court did not explain what circumstances might trigger the juvenile court's duty to appoint counsel. See, *In re A. T.,* 9th Dist. No. 23065, 2006–Ohio–3919 at ¶ 57; *In re Wylie,* 2d Dist. No.2004CA0054, 2004–Ohio–7243, at ¶ 70. In *Williams,* the child whose custody was at issue was four years of age at the time he was initially placed in the temporary custody of the child protective agency. *Williams* at ¶ 2. He was subsequently returned to his mother, removed again, and was six years of age at the time the permanent custody hearing was conducted. *Id.* at ¶ 4. The child was represented by a guardian ad litem, who was an attorney, but was not appointed to represent the child in a dual capacity. *In re Williams,* 11th Dist. Nos.2002–G2454, 2002–G–2459, 2002–Ohio–6588, at ¶ 20. The child was said to have "repeatedly expressed a desire to remain with his mother," and the guardian ad litem recommended that permanent custody be granted to the agency. *Williams,* 2004–Ohio–1500, at ¶ 5.

{¶15}  The appeals court in *Williams* emphasized that the child expressed his wish for reunification "often," "consistently," and "repeatedly." *Williams,* 2002–Ohio–6588, at ¶ 17, ¶ 20, and ¶ 9. He "often did not want to let appellant out of his sight." *Id.* at ¶ 9.  The appellate court recognized that "there is no need to consider the appointment of counsel based upon a child's *occasional* expression of a wish to be with a parent or because of a statement made by an immature child." (Emphasis added.) *Williams,* 2002–Ohio–6588, at ¶ 24; *In re A. T., supra.*

{¶16}  In the instant case, J.E. was eight years old at the time of the permanent custody hearing.  The guardian ad litem testified that he was reserved about his opinion

regarding where he would like to live. He liked the foster home, but loved his mother. When specifically asked if there was a conflict between his recommendation and the boys' wishes, the guardian responded that what is best for the children might conflict with the children's wishes. The children had expressed to their caseworker that they would like to stay in the foster home, and expressed to their foster mother that they would like to be adopted. The foster mother believed that J.E. wanted his mother to be healthy and safe, but he had moved on. Tr. 52. Further, the court interviewed the children in camera regarding their wishes. Based on the record before this Court, the evidence does not reflect a conflict of interest between J.E. and the guardian ad litem. J.E. did not consistently and repeatedly express a desire for reunification such that the appointment of independent counsel was required.

{¶17} The first assignment of error is overruled.

II.

{¶18} Appellant argues that the court erred in granting the motion for permanent custody because the evidence did not support a finding that permanent custody was in the best interest of J.E.

{¶19} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases."

*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985).

{¶20} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60 (1990); See also, *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel,* 55 Ohio St.3d at 74, 564 N.E.2d 54.

{¶21} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶22} The evidence clearly demonstrated a bond between appellant and the boys. However, all of the professionals who testified in the case noted the importance of stability and predictability for the boys. Although appellant was more stable at the time of trial than she had been throughout the case, her progress was relatively recent. Appellant

had exhibited a cyclical pattern during appellee's involvement with her, and during the pendency of the case she lived in five different places, was homeless for a period of twelve months, and was arrested four times, spending time in jail. Further, the caseworker was concerned about appellant's ability to maintain sobriety once Scott Reynolds was released from jail.

{¶23} The boys had lived in five different placements, with the current foster family being the longest placement. The lack of stability had been difficult for the boys. The boys' therapist testified that the boys were diagnosed with emotional disorder not otherwise specified, and exhibited anger, had difficulty concentrating in school, and were more highly reactive in certain situations. She testified that the children were getting consistency in their foster home, which they needed to deal with their issues. J.E. indicated to the caseworker and his foster parents that he would like to stay in the foster home. J.E. went to camp, and had an established routine in the foster home. The trial court did not err in finding permanent custody to be in the best interest of J.E., as he needed a legally secure placement which was not likely to be achieved without a grant of permanent custody.

{¶24} The second assignment of error is overruled.

{¶25}  The judgment of the Knox County Common Pleas Court, Juvenile Division, is affirmed.  Costs are assessed to appellant.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.