[Cite as *In re K.B.*, 2019-Ohio-4315.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTERS OF: | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| K.B.1 | : | Hon. John W. Wise, J. |
| K.B.2 | : | Hon. Craig R. Baldwin, J. |
| K.B.3 | : | |
| K.B.4 | : | Case Nos. 19CA000007 |
| K.B.5 | : | 19CA000008 |
| K.B.6 | : | 19CA000009 |
| K.B.7 | : | 19CA000010 |
| | : | 19CA000011 |
| | : | 19CA000012 |
| | : | 19CA000013 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Knox County Court of
                             Common Pleas, Juvenile-Probate
                             Division, Case Nos. 2182121, 2182122,
                             2182123, 2182124, 2182125, 2182126,
                             2182127

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            October 18, 2019

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant Paternal
                                          Grandmother, Lisa Butler

ASHLEY L. JOHNS
Knox County Department of Job             JOHN DANKOVICH
and Family Services                       Knox County Public Defender
117 East High Street                      110 East High Street
Mount Vernon, Ohio 43050                  Mount Vernon, Ohio 43050

For Defendant- Appellant Robin Dawson

MARY L. RANNEY
1 South Main Street
P.O. Box 484
Utica, Ohio 43080

*Baldwin, J.*

{¶1} Robin Dawson, Mother of the seven minor children who are the subjects of this case, and Lisa Butler, Paternal Grandmother of the children, appeal the decision of the Knox County Court of Common Pleas granting permanent custody to Knox County Department of Job and Family Services, Children and Family Services Division. Appellee is Knox County Department of Job and Family Services, Children and Family Services Division.

## STATEMENT OF FACTS AND THE CASE

{¶2} Appellant Robin Dawson is the Mother of the seven minor children who were taken into custody by Appellee pursuant to a dependency complaint filed in 2016. Appellant Lisa Butler, paternal grandmother, had legal custody of the children, but they were removed in October 2016 when Appellant Butler was evicted from her home and when Appellee discovered that a resident in Appellant Butler's home had sexually abused two of the children and further that Appellant Butler had failed to comply with a court order restricting exposure of the children to their Uncle and Father. The Appellee was assisting Appellant Butler with her search for a new residence when she announced that she moved to New Mexico to live with Clifford Mason, a person she know from her high-school days. Appellant Butler's contact with the children after her move to New Mexico in June 2018 was limited to infrequent phone/video calls.

{¶3} The children remained in the Appellee's custody until Appellee filed a motion for permanent custody in 2018. Because the case could not be resolved prior to the expiration of two years from the date of the removal of the children from Appellant Butler's legal custody, Appellee initiated a new action by requesting an ex parte order on

September 24, 2018 under new case numbers and filed an amended complaint on October 9, 2018 for permanent custody of all the children.

{¶4}   The trial court appointed counsel for the Appellants, the father of the children and two of the children who have expressed a desire to remain with Appellant Butler.  The trial court also appointed a guardian ad litem for the children as well as a separate guardian ad litem for Appellant Dawson, presumably due to her alleged limited ability to comprehend the proceedings.

{¶5}   The complaint came on for hearing on March 20, 2019 and was completed on March 21, 2019.  Appellee presented the testimony of several witnesses to describe the circumstances that lead to the removal of the children from Appellant Butler's legal custody,  address its efforts to assist the Appellants in regaining custody of the children and to demonstrate that the problems that caused the removal of the children remained unresolved. Appellants were called to testify by Appellee and they both conceded that they did not presently have space for the children in their current residences, a requirement of the case-plan. The case-plan also required Appellants to obtain employment that would allow them to provide the children's basic needs. Appellant Dawson was unable to obtain employment, and while Appellant Butler testified that she had recently found employment in New Mexico, it was not clear that it would provide support for all of the children.

{¶6}   Neither Appellant had a driver's license or car insurance as required by the case-plan, but they contended they would be able to arrange transportation.  Appellant Butler suggested that the children would either walk to school or appointments or would be transported by Clifford Mason, the person with whom she was currently living.

{¶7}   Appellant Butler did offer the testimony of Clifford Mason, and he acknowledged that they would need to make adjustments to their living space to

accommodate the children. He admitted that he had not met the children except to see them across a parking lot and he was under the impression that they would receive only two of the children and not seven. He had incomplete knowledge of the behavioral and intellectual difficulties suffered by the children.

{¶8} Appellant Dawson admitted that she had given birth to two additional children while this case was pending, that both were in her custody and that Franklin County Children's Services maintained an open case regarding those children. She described one of the children as suffering from a condition that would cause him to turn blue and lose consciousness, though it is not clear whether this problem was the result of the child's intentional act or a medical condition.

{¶9} The parties also discussed the referral of Appellant Dawson to the County Developmental Disabilities Board. Appellee's witnesses testified to Appellant Dawson's low IQ and she did claim difficulty reading, but she notably had no difficulty understanding and answering questions posed to her at the hearing. She also had sufficient knowledge of her situation to call her caseworker for assistance on a regular basis and the insight to recognize that she was responsible for finding a suitable parenting program. (Transcript, pp. 169, 172). Appellee did investigate the requirements for a referral to the Developmental Disabilities Board and had concluded that no referral could be made because Appellant Dawson did not have access to evidence that she had a qualifying disability that began prior to her twenty-first birthday.[1]

---

[1] Eligibility for services from a Board of Developmental Disabilities requires evidence of a "severe, chronic disability," that manifested before age twenty-two and results in a substantial functional limitation in at least three of seven areas of major life activities listed and causes the person to need a combination and sequence of special , interdisciplinary, or other type of care, treatment or provision of services for an extended period of time that is individually planned and coordinated for the person. R.C. 5126.01. While Appellant Dawson may have suffered some intellectual issues, the record does not reflect any substantial functional limitations.

{¶10} Neither Appellant Dawson's counsel nor her guardian ad litem offered evidence that would support a conclusion that the County Developmental Disabilities Board could provide services that would assist in resolving the circumstances that caused the removal of the children from the home or that Appellant was qualified for such services.

{¶11} Each of the children suffered some combination of behavioral, emotional or intellectual deficits that would make caring for any one of them more difficult and caring for all seven a particularly difficult challenge.

{¶12} At the conclusion of the evidence the trial court invited post trial briefs. Appellee did file a post-trial brief and a request that the trial conduct an in camera interview with the oldest child. That request was granted and the trial court did meet with the child.

{¶13} Prior to the hearing, the guardian ad litem filed a report agreeing with the disposition of permanent custody. She testified at the hearing and it was evident that she struggled with the decision, but ultimately agreed that neither Appellant was prepared to accept the children into their home at the time of the hearing.

{¶14} On April 11, 2019 the trial court issued a judgment entry with a detailed summary of the testimony and evidence and a thorough legal analysis supporting its conclusion that the Appellee used reasonable efforts to prevent the removal of the children, that the Appellants had failed to resolve the issues that cause the removal of the children from the home and that it was in the children's best interest to terminate their parents' rights and grant permanent custody to the Appellee.

{¶15} Appellant Butler filed a timely appeal and submitted three assignments of error:

**{¶16}** "I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**{¶17}** "II. THE COURT ERRED IN ALLOWING THE MOTION TO PROCEED OR GRANTING THE MOTION DUE TO LACK OF REASONABLE EFFORTS."

**{¶18}** "III. THE RIGHTS OF THE CHILDREN, PARENTS AND FAMILY WERE VIOLATED AS THEY WERE NOT GIVEN INDIVIDUAL CONSIDERATION."

**{¶19}** Appellant Dawson also filed an appeal and submitted two assignments of error:

**{¶20}** "I. KNOX COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES, CHILDREN AND FAMILY SERVICES DIVISION, FAILED TO PROVIDE REASONABLE CASE PLANNING AND DILIGENT EFFORTS TO ASSIST MOTHER TO REMEDY THE CONDITIONS THAT INITIALLY CAUSED THE REMOVAL OF THE MINOR CHILDREN FROM THE HOME."

**{¶21}** "II. THE TRIAL COURT ERRED BY DENYING A REQUEST FOR APPOINTMENT OF AN ATTORNEY ADVOCATE FOR THE MINOR CHILD, (K.B. (1)) AND BY PROCEEDING WITH THE PERMANENT CUSTODY HEARING WITHOUT COUNSEL FOR THE CHILD."

### STANDARD OF REVIEW

**{¶22}** We review the trial court's decisions in this matter for abuse of discretion. We must examine the entire record and determine whether there is sufficient competent and credible evidence to support the judgment rendered by the trial court. *Seasons Coal Company v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1978). *Trickey v. Trickey*,

158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). The trial court must resolve disputed issues of fact and weigh the testimony and credibility of the witnesses. *Bechtol v. Bechtol,* 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). We defer to the trial court's discretion because the trial court had the opportunity to observe the witnesses and parties in weighing the credibility of the proffered testimony in a way a reviewing court cannot.

{¶23} The Supreme Court has defined the term abuse of discretion as demonstrating the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Further, if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the juvenile court's verdict and judgment. *In the Matter of: M.D. & A.D. (D.D., Defendant-Appellant)*, 10th Dist. Franklin Nos. 2019-Ohio-3674, ¶¶ 32-33.

## ANALYSIS

### Appellant Butler's First Assignment of Error

{¶24} In Appellant Butler's First Assignment of Error, she contends that the trial court's decision that the best interests of the children would be served by granting permanent custody of the children to the Appellee is against the manifest weight and sufficiency of the evidence. Our review of the record demonstrates that this assignment has no merit as the evidence provided at the hearing provided competent, credible evidence that the award of permanent custody was in the best interest of the children.

{¶25} The trial court's analysis of the best interests of the children is guided by R.C. 2151.414(D) which states:

> In determining the best interest of a child at a hearing held pursuant to
>
> division (A) of this section or for the purposes of division (A)(4) or (5) of

section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a)     The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b)     The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c)     The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)     The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

{¶26} The findings issued by the trial court reflect a close consideration of all of the factors listed in this section of the Code.

{¶27} The relationship and interaction of the children with their mother and father was described by the case worker and those observing visits among family members and is noted by the trial court.  Likewise the interaction among children was described in the

testimony regarding the visits and by the foster parents who testified as to their observations. Those foster parents and the case worker described the bond the children had formed with their foster parents and how their behavior and demeanor had improved since they had been removed from Appellant Butler's custody in 2016.

{¶28} The guardian ad litem for the children recommended the grant of permanent custody, with some regret that Appellant Dawson was unable to make material progress on the elements of the case plan, despite having well over two years to achieve the listed goals. The guardian ad litem concluded that Appellant Dawson meant well, but felt she simply was not capable of accepting custody of the children and providing the care and attention they needed.

{¶29} Two of the children expressed interest in living with Appellant Butler, but the State of New Mexico had found her residence unsuitable and, on the date of the hearing, there was no room for additional children within the home. Appellant Butler had also failed to obtain a driver's license and car insurance as required by the case plan and instead planned to rely on her live in friend, Clifford Mason, for transportation or simply walking the children to needed services. Mr. Mason had no legal obligation toward the children. He admitted he had not met them and did not have detailed information regarding their needs. He stated he was expecting only two children and not seven.

{¶30} The oldest child has also allegedly expressed an interest in living with his grandmother. At the request of the Appellee, the trial court conducted an in camera interview with this child and determined that his greatest wish was for a permanent solution, and his desire to live with his grandmother was only an attempt to achieve a final resolution and was not motivated by any familial bond.

{¶31} The children had been in the custody of the Appellee for nearly two and one half years at the time the final entry was journalized. The Appellee took custody of the

children in October 2016, filed a motion for permanent custody in 2018 and due to the impending expiration of the time limit imposed by RC 2151.353(G), filed a new case in September 2018. The facts underlying the delay that lead to the necessity of the new filing are not described in the record, but there is some evidence that a motion for permanent custody was filed in 2018 in the original cases, but could not be completed due to the withdrawal of a party's attorney. The children had been previously removed from Appellant Dawson's custody and placed in the legal custody of Appellant Butler. The oldest children and two of the younger children had tired of the upheavals caused by the moves and wished for a final and permanent solution.

{¶32} Finally, the record supports a conclusion that a legally secure placement was not possible without a grant of permanent custody to the Appellee. Appellant Butler had legal custody prior to the removal of the children and had been a candidate to continue custody, but eviction from the home, failure to complete the tasks in the case plan and the disapproval of the residence by the authorities in New Mexico made a legally secure placement in her custody unlikely in the foreseeable future. Likewise, Appellant Dawson's failure to complete the case plan and inability to acquire sufficient housing for any of the children, as well as giving birth to two additional children during the pendency of this case undermines her ability to provide a legally secure placement. Finally, the next of kin suggested were considered and rejected for various but valid reasons, eliminating the possibility of placement with them. The only alternative was placing permanent custody with the Appellee.

{¶33} The facts we have described above, as well as all the facts outlined by the trial court in its detailed review of the evidence, support a conclusion that the trial court's decision was supported by competent, credible evidence and was not against the manifest weight or sufficiency of the evidence.

**{¶34}** Appellant Butler's first assignment of error is denied.

### Appellant Dawson's First Assignment of Error/Appellant Butler's Second Assignment of Error

**{¶35}** Appellant Butler's second assignment of error and Appellant Dawson's first assignment of error are essentially the same, so we will address them simultaneously. They both contend Appellee failed to provide reasonable efforts to remedy the conditions that led to the removal of the children from the home.

**{¶36}** Revised Code 2151.412 obligates Appellee to identify the conditions that lead to the removal of the children from the home, develop a case plan with the goal of remedying the identified problems and offering opportunities for the Appellants to work toward satisfying those goals. The Appellee must make reasonable efforts to fulfill this duty prior to seeking termination of parental rights. Appellants contend Appellee has failed to show reasonable efforts, primarily relying upon the fact that Appellant Dawson was not provided services by the Knox County Board of Developmental Disabilities.

**{¶37}** Appellants' contention that reasonable efforts were not proven is belied by the record in this case, first by the pleadings. After the refiling of the complaint in this matter, hearings were conducted and in both instances the trial court concluded that reasonable efforts had been made by the Appellee to assist Appellants in eliminating the conditions that caused the removal of the children from the home. (Magistrate's Decision: Adjudicatory Hearing, November 6, 2018, Docket # 28; Agreed Judgment Entry: Dispositional Hearing, December 26, 2018, Docket #29). The latter entry, issued only three months prior to the hearing on the complaint for permanent custody, was an agreed entry executed by all the parties. We cannot countenance such an unjustified reversal in position of the parties regarding the issue of reasonable efforts.

**{¶38}** Even if we were to disregard Appellants' agreement that Appellee had fulfilled its obligation, we would arrive at the same conclusion. The record is replete with competent, credible evidence that Appellee worked diligently with Appellants to remedy the conditions that caused the children to be removed from the home.

**{¶39}** With regard to Appellant Dawson and her referral to the Board of Developmental Disabilities, we first note that such a referral is not part of the case plan and neither her counsel nor her guardian ad litem sought to have it added to the plan. The parties discussed the referral at the hearing on the complaint, but did not provide any evidence regarding how that referral would have assisted the Appellant with the problems that caused the removal of the children from the home. The Appellee investigated the possibility of a referral but found that it was likely that Appellant Dawson was ineligible due to her age and lack of evidence of the onset of her alleged impairment. Appellant Dawson did not provide any evidence that she was eligible for services from that agency or that services were available to assist her with issues that are relevant to the issues before this court. Further, though Appellant Dawson is now aware of the assistance that allegedly is available from a Board of Developmental Disabilities, there is no evidence that she has sought that assistance from Franklin County where she has an open case with Franklin County Children's Services regarding her two infant children in her custody.

**{¶40}** Despite Appellant Dawson's alleged intellectual deficits, she demonstrated an ability to call her case worker for assistance when she had questions and she had the insight to recognize that she had an obligation to complete a parenting plan because she was responsible for the "mess" that she had created. (Transcript, p. 171).

**{¶41}** Appellee was working with Appellant Butler when, without notice she moved to New Mexico and had very little contact with the children, abandoning the case plan and

making it difficult, if not impossible, for the Appellee to continue to assist her toward satisfying the requirements in the plan.

**{¶42}** For these reasons and for the reasons set out by the trial court, we hold that Appellee fulfilled its obligation to provide reasonable efforts to resolve the conditions that lead to the removal of the children from the home.

**{¶43}** Appellant Butler's Second Assignment of Error and Appellant Dawson's First Assignment of Error are overruled.

### Appellant Butler's Third Assignment of Error

**{¶44}** In her third assignment of error, Appellant Butler contends that "Despite being split up at the beginning of this action, the children herein were not considered individually and therefore their rights were violated and no one was seriously considered for placement of any individual child" (Appellant Butler's Brief, p.7) and asserts that such a failure is a due process and equal rights violation. Appellant Butler did not raise this issue before the trial court, offers no authority in support of her argument and overlooks the statutory obligation of the Appellee to make reasonable efforts to place the siblings together.

**{¶45}** The parties did ask questions regarding placement of the children individually and in groups less than seven, so Appellant Butler was aware of the Appellee's actions regarding placement at the trial court level, but did not bring this constitutional argument to the attention of the trial court. "Failure to raise a constitutional issue in the trial court, when the issue is apparent at the time of trial, constitutes a waiver of such issue on appeal. *Remley v. Cincinnati Metro.* Housing Auth. (1994), 99 Ohio App.3d 573, 574, 651 N.E.2d 450, quoting *State v. Awan* (1986), 22 Ohio St.3d 120, 489 N.E.2d 277, syllabus. Appellant Butler has waived her constitutional argument, but even

if we were to consider the argument on its merits, the outcome would not differ. The language of Revised Code 2151.411 contradicts Appellant Butler's assertion that the Appellee was obligated to consider placing fewer than all of the children. That section states:

> Whenever a child comes into the custody of a public children services agency, either as part of a sibling group or subsequent to the previous placement of a sibling, the agency is strongly encouraged to make reasonable efforts to place the siblings together, unless it would be contrary to the siblings' best interest or well-being. If siblings are not placed together, the agency should make reasonable efforts to ensure the siblings maintain frequent connections through visitation or other ongoing interaction, unless contrary to the siblings' placement or well-being.

**{¶46}** Contrary to Appellant Butler's assertion, the Appellee is required to make efforts to insure that children are placed together and if not, take reasonable steps to insure, if possible, continued contact among the siblings. After review of the record in this case, we hold that Appellee acted in accordance with the mandate of RC 2151.411 and that Appellant Butler's claim of a due process/equal protection violation is without merit.

**{¶47}** Appellant's Third Assignment of Error is overruled.

**{¶48}** Within her Third Assignment of Error, Appellant Butler contends that the trial court erred by not appointing counsel for K.B.(1), the eldest child, who was subjected to an in camera interview. This assertion is identical to Appellant Dawson's Second Assignment of Error, so we will address this portion of Appellant Butler's Third Assignment of Error simultaneously with Appellant Dawson's Second Assignment of Error.

**Appellant Dawson's Second Assignment of Error**

**{¶49}** Both Appellants contend the trial court erred by refusing to appoint an attorney for K.B.(1), but no request appears in the record. Further, the trial court conducted an in camera interview with K.B.(1) and concluded that his alleged desire to live with Appellant Butler was not based upon a familial bond, but was merely his way of expressing his desire that the issue of his custody be resolved with finality.

**{¶50}** The only discussion regarding counsel for K.B.(1) appears at the opening of the hearing on the complaint and was brought to the attention of the trial court by counsel for two of the other children in the following exchange:

MS. STRATMAN: My understanding I guess (K.B.(1)) has changed his mind and is now wanting to go with grandmother so I guess I'm also representing him, too.

MS. JOHNS: There's no Court appointment to that effect, but if the Court would like to appoint her to that right now, I would not be --

THE COURT: Does anybody have an objection to --

MS. STRATMAN: I don't think his interests will be different from K2 and K3. He's gone back and forth to be honest. Even in my interviews he's gone back and forth, so I don't think it's a -- I have met with him personally though so it's not like I don't know him.

THE COURT: I think it's a little late in the game to appoint attorneys to anyone.

You certainly -- you can certainly express those wishes.

MS. STRATMAN: Initially --

THE COURT: I'm not going to appoint you as an attorney for anyone else at this point, I guess.

MS. STRATMAN: Initially I had met with him and he had said he wasn't opposed to it. Again, I'm not opposed to representing his interests, because I have met him personally so it's not like I don't know him. So it's up to you how you want to proceed.

**{¶51}** The guardian ad litem for the children was present during this exchange and offered nothing in opposition or support of appointment of an attorney for the child.   And, while K.B.(1)'s ambivalence toward his placement was discussed at the hearing during the questioning of the witnesses, no request was made for appointment of counsel

**{¶52}** At the close of the hearing and prior to the issuance of the trial court's decision, Appellee requested that the trial court conduct an in camera interview with K.B.(1).   The trial court completed the interview and incorporated its findings in the judgment entry:

The Court conducted an in camera interview with K.B.(1) regarding his wishes. K.B.(1) primarily expressed his strong desire for a permanent placement. He stated that he would prefer to live with Grandmother, or with his current foster family. However, the overriding factor in his view, is permanency; K.B.(1) does not want to have to change homes again. As stated previously, KCDJFS has had continuous temporary custody of all seven children for the past 29 months.

(Judgment Entry, April 11, 2019, paragraph 8, p. 11-12).

**{¶53}** We found no motion to appoint counsel for K.B.(1) and thus no error in refusing to grant the motion, but the precedent of the Supreme Court of Ohio compels us to review the record to insure that the trial court addressed the issue properly.   The Supreme Court has held that "[p]ursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and

Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." *In re Williams,* 2004-Ohio-1500, 101 Ohio St. 3d 398, 399, 805 N.E.2d 111 syllabus.   While not addressing directly the definition of "certain circumstances" that would warrant appointment of counsel, the court did note that the prevalent practice requires the trial court "make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." *In re Williams*, 2004-Ohio-1500, ¶ 17, 101 Ohio St. 3d 398, 402–03, 805 N.E.2d 1110, 1113–14.  We have noted that the child in *Williams* "was said to have "repeatedly expressed a desire to remain with his mother, and the guardian ad litem recommended that permanent custody be granted to the agency." *Id.* at ¶ 5 as quoted in *In re C.E., 5th Dist. Knox No.* 15CA20, 2016-Ohio-1501, ¶ 14. We noted that the child C.E.  "did not consistently and repeatedly express a desire for reunification such that the appointment of independent counsel was required." *Id* at ¶ 16.  Likewise, in this case the record does not reflect that K.B.(1) consistently and repeatedly expressed a desire for placement that was inconsistent with the recommendations of the guardian ad litem.  The only consistent wish as noted by the trial court and the counsel for his siblings was that the matter of his placement be resolved with finality.

{¶54} For the forgoing reasons we hold that the trial court did not err by not appointing counsel for K.B.(1).  Appellant Dawson's Second assignment of error and that portion of Appellant Butler's Third Assignment of error addressing this issue are denied.

**{¶55}** The decision of the Knox County Court of Common Pleas, Juvenile-Probate

Division is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, John, J. concur.